**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re: BKY No. 12-35407

Chapter 11

Ronald and Katherine Hofmann,

    Debtor.

---

**DBETOR'S NOTICE OF HEARING AND MOTIONS FOR APPROVAL
OF A SALE FREE AND CLEAR OF LIENS AND ENCUMBRANCES; FOR AUTHORITY TO PAY
CERTAIN CLAIMS; AND TO ASSUME AND ASSIGN EXECUTORY CONTRACTS**

To: The Honorable Kathleen H. Sanberg, Judge of the United States Bankruptcy Judge the United States Trustee and all parties in interest.

NOTICE OF HEARING AND PRELIMINARY PROCEDURAL MATTERS

1. The debtors, Ronald and Katherine Hofmann ("debtors"), by and through its undersigned attorney, moves the court for the relief requested below and gives notice of hearing.

2. The court will hold a hearing on the debtors' motions for approval of a sale free and clear of interests, for authority to pay certain claims, to assume and assign executory contracts, on May 15, 2013 at 10:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Kathleen H. Sanberg, Judge of United States Bankruptcy Court, in courtroom 8 West of the United States Bankruptcy Court, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3. **Any response to these motions must be filed and served not later than five days prior to the hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY**

**FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING. Responses must be served and filed in accordance with applicable Federal Rules of Bankruptcy Procedure and Local Rules.**

4. This court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§1334 and 157. This proceeding is a core proceeding. This motion arises under Title 11 U.S.C. §§361, 362 and 363 and applicable Local Rules.

5. This case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on September 21, 2012. This case is now pending in this court. The debtor is serving as debtor-in-possession.

## SUMMARY OF THE FACTUAL BACKGROUND

6. The debtors own and operate the Dairy Queen restaurant in Lindstrom, Minnesota. They operate the business through a corporation they own, KRH, Inc. ("KRH"). The Hofmanns own the real estate at which Dairy Queen operates. The restaurant operates under an operating agreement with Dairy Queen International, Inc. dated March 11, 1991 ("franchise") The franchise is held by Katherine Hofmann.

7. The debtors have pre-petition secured debt that is secured by the business assets.

8. The debtors have a prepetition loan from Premier Bank, in the approximate amount of $643,962, exclusive of accrued attorneys' fees and interest. That loan is secured by a first mortgage lien on the real estate owned by the debtors and leased to KRH and used in the business operations  That loan is also secured by an assignment of the franchise agreement, and a lien on all of

the business assets of KRH.  The debtors believe that Premier Bank's mortgage is a first and prior lien on the real estate, and its liens on the personal property are first and prior.

9. Ronald Hofmann is indebted to Central Bank.  This debt arises out of a prepetition loan from the River Bank. Central Bank is the successor in interest to the River Bank.  Central Bank is owed approximately $111,119, and Central Bank asserts a lien on the business assets owned by KRH.

10. The Internal Revenue Service of the United States of America has filed a proof of claim indicating that it has a claim against the debtors in the approximate amount of $245,078.  The IRS proof of claim also indicates that this claim is secured by a tax lien and that the amount of its secured claim is $179,833.  The debtors dispute the amount of this claim and intend to object to the proof claim.  The debtors believe that this tax claim is substantially overstated.  The Debtors believe that the IRS claim is in error, in part, and erroneously attributes tax liabilities to Mr. Hofmann that are in fact liabilities of an unrelated third party.  In addition, the Hofmanns believe that this claim is overstated because of an error in attributing debt forgiveness to them as income, which should not have been treated that way.  The Hofmanns believe that the tax debt owed to the IRS is not more than $50,000.

11. This case was filed on September 21, 2012. Following substantial efforts by the debtors to resolve their disputes with their primary creditors.  The loans

with Central Bank and Premier Bank had matured and were in collection. The debtors' efforts to settle with the banks were not fruitful.

12. The debtors had been negotiating with a third party for the sale of the business assets over the Summer and Fall of 2012 – a transaction that the debtors hoped would result in the satisfaction of the debts owed to the banks. In addition the debtors had engaged a tax consultant and they were working to resolve the IRS dispute.

13. The debt owed to the Minnesota Department of Revenue was in a payment plan.

14. The debtors' business income continued to decline, largely as a result of the on-going recession, and exacerbated by a major road construction project that effectively limited access to the restaurant. Because of the reduced business revenue the debtors were unable to bring their debts current, and the negotiations for the sale of the business were delayed. The banks moved forward to exercise their rights as secured creditors upon default. Faced with the imminent risk of the loss of their assets and their business, the debtors filed for relief under chapter 11 of the bankruptcy code.

15. The debtors continued to negotiate for the sale of the business assets, believing that that opportunity provided for the best and most likely of satisfying the claims of creditors.

16. The debtors have reached an agreement for the sale of the business. That transaction is accomplished through two separate but related and dependent

agreements, one with the debtors for the sale of the real estate and one with Ms. Hofmann and KRH for the sale of the business assets. The debtors seek approval of their real estate purchase agreement and the asset purchase agreement. KRH is moving separately in its case for the approval of the assets purchase agreement

**Summary of the terms of sale and related matters**

17. The terms and conditions of the sale are set forth in the real estate purchase agreement dated March 14, 2013 and the asset purchase agreement dated March 14, 2013. A true and correct copy of the purchase agreement is appended hereto as Exhibits A and B. The following summarizes the key points of the proposed transaction, but parties in interest are urged to review the entire agreement. The buyer will pay $1,335,000 in total, with $2,500.00 paid and received as earnest money. The real estate purchase agreement provides for payment of $400,000, to be paid in cash at closing. The asset purchase agreement provides for payment of $425,000, which is allocated to the franchise, and will be paid at closing; with the balance of $425,000 to be paid over time pursuant to a note. The debtors and KRH are obliged to convey good marketable title of the real and personal property, free and clear of all liens and encumbrances. Copies of both purchase agreements are attached hereto as **Exhibits A** and **B**.

18. The debtors desire to sell the business in accordance with these agreements.

19. The buyer of the real estate is His Land Company, LLC. The buyer of the buyer assets is His Management Group, Inc. Mr. Dan Goetzman is the principal of

       the two buyers.  The buyer is not affiliated with the debtors and the agreements were negotiated at arm's length.

20. In order to convey good title to the business the debtors must obtain court approval for a sale free and clear of liens and encumbrances.   The debtors move the court to approve the sales transactions, and to authorize the sale free and clear of all interests, liens and encumbrances.   The debtors also seek authority to pay the claims of Premier Bank at closing in order to avoid the accruing of additional interest and costs.

**Assumption and assignment of the Dairy Queen operating agreement.**

21. Katherine Hofmann holds the franchise.  The franchise agreement is an executory contract for purposes of Section 365 of the bankruptcy code.

22. The purchase agreements contemplate the transfer of the franchise agreement to the buyer.

23. The franchise agreement has favorable terms and conditions compared to new operating agreements offered by Dairy Queen International.  The license fees are lower than the current standards.  The economic benefits of the assignment of the franchise and the concomitant advantageous cost structure were a significant factor in negotiating the overall purchase price.

24. The assignment of the franchise agreement is an essential part of the contemplated purchase and sale transactions.

25. The debtors propose to assume the franchise agreement and to assign it to the buyer.

26. Section 365 authorizes the assumption and assignment of executory contracts.

27. The conditions imposed by section 365 are met here. The buyer's principal has, on information and belief, sufficient financial and other resources to enable it to meet its obligations under the franchise. The buyer's principal is a Dairy Queen operator and would qualify independently as a licensee.

**MOTIONS**

28. The debtor moves the court for its order approving the purchase agreement and authorizing the debtor to sell their real property to the buyer in accordance with the terms of the purchase agreement, and authorizing that sale free and clear of all liens and encumbrances, in accordance with 11 USC § 363(f), with the liens and encumbrances to attach to the proceeds with the same extent, dignity and priority that such liens held with respect to the assets being sold.

29. The debtor moves the court for its order authorizing the debtor to pay the proceeds from such sale to Premier Bank to release its mortgage and liens. The court has authority to grant such relief under 11 USC § 105.

30. The debtor moves the court for its order approving the debtor's assumption of the franchise and the debtor's assignment of the franchise to the buyer in accordance with 11 USC § 365.

**Notice of Intention to Call Witness**

31. If this motion is contested, the debtors intend to call Mr. Ron Hofmann as a witness to testify.  His business address is P.O. Box 311, Lindstrom, MN 55045-0311.

32. Debtors may also call a representative of the buyer as a witness.

> Respectfully submitted,
>
> WILLIAM A. VINCENT, P.A.
>
> /e/ William A. Vincent
> 14525 Highway 7
> Suite 305
> Minnetonka, MN 55345
> Tel: 952-401-8880
> Fax: 952-401-8889
> Email: wavpatax@aol.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:  BKY No. 12-35407

Chapter 11

Ronald and Katherine Hofmann,

     Debtors.

**MEMORANDUM OF LAW**

**INTRODUCTION**

This Memorandum of Law is submitted by the debtors, Ronald and Katherine Hofmann in support of its motions to approve the sale of assets free and clear of interests, and for authority to assume and assign an executory contract.

**FACTUAL BACKGROUND**

The debtors own and operate the Dairy Queen restaurant in Lindstrom Minnesota. The debtors own a corporation called KRH, Inc. ("KRH"). The debtors own the real estate at which KRH operates the restaurant business. KRH generally owns the business assets. Katherine Hofmann holds the operating agreement from Dairy Queen International, Inc. pursuant to which the business operates as Dairy Queen restaurant.

The debtors have negotiated with Mr. Dan Goetzman for the purchase and sale of the business assets. Mr. Goetzman, through business entities, have entered into two agreements, providing for the purchase and sale of the debtors' business enterprise and real estate. The debtors have entered into a real estate purchase agreement dated as of March 14, 2012 pursuant to which the debtors have agreed to sell the business real estate to His Land

Company, LLC for $400,000 to be paid at closing. The debtors and KRH have entered into a second agreement for the purchase and sale of the personal property used in the business, including the assignment of Ms. Hofmann's operating agreement with Dairy Queen International, Inc. The purchase price for the personal property is $935,000, of which $462,500 is to be paid at closing and the balance to be paid over time pursuant to a note.

In order to accomplish these transactions the debtors seek authority to sell their commercial real estate and personal property free and clear of interests, liens and encumbrances. The buyer requires that Ms. Hofmann assign to it the Dairy Queen operating agreement. The debtors therefor seek authority to assume and assign the operating agreement to the buyer. The debtors desire to pay the first lienholder at closing in order to prevent the accrual of additional interest and fees. And, the debtors seek this relief on an expedited basis.

## LEGAL ARGUMENT

**1. The sale free and clear**

The debtors desire to sell their business assets. They believe that the transactions contemplated by the purchase agreements present the best opportunity for them to satisfy the claims of creditors. These transactions were negotiated over a period of time, and the debtors believe that these terms present the highest value that can be realized from these assets at this time. The debtors' business has been burdened by reduced revenues during the recession, and further compounded by a major rood construction project. The debtors understand that the value of a business is going to be largely driven by its revenues and profits. Regardless of potential future circumstances, this business is burdened by substantial operating losses in recent years and reduced income. The debtors believe that they have negotiated the best

possible price. The Hofmanns believe that consummating these transactions is in their best interests and the best interests of the creditors and the estate.

Section 365 of the bankruptcy code authorizes the debtor-in-possession to sell property of the estate. Section 365 (b) provides that:

(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

   (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

   (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

The debtors here seek to sell the property free and clear of all liens and encumbrances. Section 365 (f) establishes the conditions under which property of the estate may be sold free and clear. That section provides in relevant part that:

**(f)** The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
**(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
**(2)** such entity consents;
**(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
**(4)** such interest is in bona fide dispute; or
**(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Generally, extraordinary transactions require court approval. The proposed transactions must be demonstrably in the best interests of the estate and supported by sound business judgment. The proposed sale is in the best interests of the estate. The transaction will facilitate the reorganization process by realizing the highest value for the business assets and providing the basis for reorganizing and making distributions to creditors.

The sale must be "free and clear." The debtor is required to deliver good marketable title. The property is subject to mortgages and liens.

Section 365 (f) authorizes a sale free and clear of interests of third parties. Here the debtors believe that the secured creditors will agree to the sale and evince their consent, and/or are subject to a transfer free and clear because of the authority contained in Section 365 (f)(5). That section authorizes a sale free and clear of interests if the interest holder could be compelled to release their interests in the subject property upon payment of a money satisfaction. The term "interest" in section 365 is broader than the notions of "lien" or "encumbrances." "Interest" encompasses co-owners of property of the estate; holders of life estates, holders of equitable trusts, as well as other types of claims and interests. If fundamentally, the creditor's or claimant's "interest" in the property is one that can be satisfied by payment, then such interests can be "voided" pursuant to section 365 (f). Some interests, such as the holder of a life estate cannot be compelled to release their interests in property and the property cannot be sold "out from under" them. Here the interest holders' claims are all merely financial. Their interests in the debtors' property is merely that of security for pre-petition debts. All of these interests can be compelled to accept a monetary satisfaction

of their claims and to release their interests in the property. Consequently these are precisely the types of interests contemplated by section 365 (f) (5). The court may order the sale free and clear of all interests.

**The assumption and assignment of an executory contract**

Katherine Hofmann is the licensee under an operating agreement with Dairy Queen International, Inc. That operating agreement grants Ms. Hofmann the right to operate the Dairy Queen restaurant under the Dairy Queen flag and establishes the terms and conditions of their business relationship. That agreement is essential to operate the business (at least to operate the business as a Dairy Queen restaurant. The financial terms are favorable compared to current operating agreements. The buyer's acquisition of the operating agreement is an essential term of the sale of the business assets.    In order to effectuate that transaction the debtors seek authority to assume and assign the Dairy Queen operating agreement.

The Dairy Queen operating agreement is an executory contract within the meaning of 11 USC § 365. That section authorizes the debtor in possession to assume pre-petition leases and to assign them to third parties. Here the assumption and assignment of this executory contract is an essential aspect of the proposed transaction and should be approved. Section 365 provides in relevant part that:

> **(a)** Except as provided in sections <u>765</u> and <u>766</u> of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> **(b)(1)** If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > **(A)** cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the

satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

**(B)** compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

**(C)** provides adequate assurance of future performance under such contract or lease.

**(2)** Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

**(A)** the insolvency or financial condition of the debtor at any time before the closing of the case;

**(B)** the commencement of a case under this title;

**(C)** the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement; or

**(D)** the satisfaction of any penalty rate or penalty provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease. . . .

**f)(1)** Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

**(2)** The trustee may assign an executory contract or unexpired lease of the debtor only if—

**(A)** the trustee assumes such contract or lease in accordance with the provisions of this section; and
**(B)** adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

The assumption and assignment of this operating agreement is necessary to enable the debtor to consummate the sale of the property to the buyer. The assumption and assignment are in the best interests of the estate. The conditions imposed by section 365 are met here. The assignee can perform. The buyer is an experienced Dairy Queen operator and has the financial wherewithal to operate the business successfully. The court should approve the assumption and assignment of the leases to the buyer.

## CONCLUSION

The sale of the debtors' business is in the best interests of all parties. It provides the best recovery for creditors. The court should approve the debtors' motions in order to enable these transactions to close.

Dated: April 23, 2013    Respectfully submitted,

WILLIAM A. VINCENT, P.A.

/e/ William A. Vincent
14525 Highway 7
Suite 305
Minnetonka, MN 55345
Tel: 952-401-8880
Fax: 952-401-8889
Email: wavpatax@aol.com

**Attorney for Debtors**